IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

     v.

ANTONIO FULTON
a/k/a "Anthony Nixon",

         Defendant.

Criminal No. 06-401 (JBS)

**OPINION**

APPEARANCES:

    CHRISTOPHER J. CHRISTIE, United States Attorney
    By:  MATTHEW J. SKAHILL, Assistant United States Attorney
    United States Attorney's Office
    401 Market Street, 4th Floor
    Camden, New Jersey  08101

    RICHARD COUGHLIN, Federal Public Defender
    By:  LORI M. KOCH, Assistant Federal Public Defender
    800-840 Cooper Street, Suite 350
    Camden, New Jersey  08102

SIMANDLE, District Judge:

The Defendant, Antonio Fulton, is charged with being a previously convicted felon in possession of a firearm on January 22, 2006, in violation of 18 U.S.C. §§ 922(g)(1) & 2.  He seeks in the present motion to suppress evidence seized from a ladies' restroom he had just entered in a tavern, claiming that the police officer's warrantless search of the ladies' room was unreasonable, and that the firearm seized in that search should be suppressed.  This Court conducted a hearing on September 27, 2006 and concludes, for the reasons stated herein, that Mr.

Fulton had no reasonable privacy interest in the unlocked, slightly opened door of the women's restroom, and there was no constitutional impairment to the police officer following him into the women's room and seizing the items he saw Fulton placing into a medicine cabinet therein.

I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The Luby Van Jam Lounge is a bar and night club at 1240 Kaighn Avenue in Camden, New Jersey, located in a high crime area.  There had been a shooting in the lounge investigated by police during the four months prior to January 22, 2006.  In the early morning hours, at about 2:30 A.M. on January 22, 2006, Camden City police officers, including Sergeant Jeffrey Frett, were called to quell a fight between two female patrons of the bar.  Sergeant Frett testified that he responded, found about 50 people outside with the fighters, separated the two combatants, and drove one from the scene to a nearby mini-mart.  Meanwhile, he heard his dispatcher announce on the radio that a black male with a blue-and-white hat was in possession of a handgun near the lounge, and he returned immediately to investigate, with other officers.

Sergeant Frett testified that when he returned to the scene, he saw and questioned the only individual wearing such a hat and fitting the description, one Clayton McNair, whom he detained.

2

He patted McNair down and discovered an empty shoulder holster and arrested him.  Other officers removed McNair from the scene. McNair told Sergeant Frett he was an employee of the bar, and Sergeant Frett then entered the bar (which was still open to the public until 3:00 A.M.) to investigate further for the missing weapon and to see if anyone needed police help.  As he entered with two other officers, he observed about fifteen people in the bar (patrons and employees), which appeared quiet inside.

Once inside, Sergeant Frett noticed the men's restroom was open and unoccupied.  He also noticed a bar patron (Defendant Fulton) stand up and look at him.  Sergeant Frett asked him to stop, to make verbal contact with him to see what his intentions were, according to Frett's testimony.  Instead of stopping, Fulton ignored him and headed toward the back of the lounge, past a bowling machine, walking quickly into the ladies' restroom. Frett followed him immediately and saw that Fulton had entered the ladies' room and had partially closed the door behind him. The door said "LADIES" on it (see photo, Ex. G-4), and the door was ajar by one or two inches.  Sergeant Frett did not prevent Fulton from closing or locking the door, and he followed Fulton into the ladies' room abut 5-10 seconds after their initial encounter.  He knew Fulton had entered the ladies' room, even though his view would initially have been obscured by the bowling machine (see diagram, Ex. G-6, and photos in Exs. D-1 and D-2)

3

because there was no other exit in the nook behind the bowling machine that led to the ladies' restroom.

When Sergeant Frett opened the door, he saw Fulton placing a handgun and a bag of marijuana into a medicine cabinet.  Frett removed the gun and the drugs and arrested Fulton.[1]  Various local charges were brought against Fulton, and the present charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), was the subject of the present federal indictment.

Sergeant Frett testified at some length and was cross-examined.  His testimony was clear and unimpeached by his detailed incident report (Attachment A to Def. Mem.).  The Court found his testimony to be credible and highly reliable.  No other witness testified.

## II.  DISCUSSION OF LAW

Defendant Fulton argues that Sergeant Frett lacked probable cause to search the restroom, leading to an unconstitutional search of a place where Fulton had a reasonable expectation of privacy, citing Ybarra v. Illinois, 444 U.S. 85 (1979), inter alia.  In Ybarra, a bar patron was subjected to a "Terry" stop

---

[1] The ladies' room, like the men's room, consisted of a single toilet and sink, with no internal stall.  It is a small space, with the light on and with locks on the door for a patron's privacy.

4

and frisk of his pockets, as he was among many customers in a bar
that the officers had a warrant to search, along with its
bartender.  The Supreme Court invalidated the frisk of this
patron because it was not based on reasonable suspicion, noting:
"The initial frisk of Ybarra was simply not supported by a
reasonable belief that he was armed and presently dangerous, a
belief which this Court had invariably held must form the
predicate to a pat down of a patron for weapons."  Id. at 92-93
(citations omitted).  While acknowledging he was not subject to a
pat-down, Defendant argues that he was subjected to an
unconstitutional search of the restroom, entry into which
required a showing of probable cause, which was absent.

The defense further points to Sharrar v. Felsing, 128 F.3d
810 (3d Cir. 1997), for the proposition that Fulton was arrested
without probable cause, that is, "facts and circumstances
'sufficient to warrant a prudent man in believing that the
[suspect] had committed or was committing an offense."  Id. at
817-818, quoting Gerstein v. Pugh, 420 U.S. 103, 111 (1975)
(internal citations omitted).

In the present case, a showing of probable cause to search
the restroom would be required only if the defendant has an
objectively reasonable privacy interest; if no such privacy
interest exists, the Fourth Amendment is not implicated.  Rakas
v. Illinois, 439 U.S. 128, 148-49 (1978).

5

It has been recognized that the Fourth Amendment may protect privacy expectations even in a public restroom, such as the area inside a stall that cannot be seen when the door is closed.  For instance, in Kroehler v. Scott, 391 F. Supp. 1114, 1116 (E.D. Pa. 1975), the court enjoined warrantless police surveillance of restroom stalls from overhead, absent a showing of probable cause and exigent circumstances.  Id.  The Kroehler opinion cited a California Supreme Court decision in People v. Triggs, 506 P.2d 232, 236 (Cal. 1973), in which that court held that the patron's expectation of privacy upon entering a restroom is not diminished or destroyed even when the toilet stall lacks a door.  Kroehler, 391 F. Supp. at 1118.

On the other hand, subsequent cases have recognized that the "expectation of privacy in commercial premises is different from, and indeed less than, a similar expectation in an individual's home."  New York v. Burger, 482 U.S. 691, 700 (1987).  Furthermore, even a normally protected private space, such as a common hallway of a duplex, loses its reasonable expectation of privacy, when the individual leaves the door unlocked and ajar.  United States v. Dillard, 438 F.3d 675 (6th Cir. 2006); see also Acosta v. United States, 965 F.2d 1248, 1251-54 (3d Cir. 1992) (no expectation of privacy in unlocked hall of apartment building).  A person who fails to lock, let alone close, the door to a public restroom exhibits no reasonable expectation of

privacy because anyone can walk in, including a police officer. Where any member of the public can simply walk in, as in this case, the police do not need probable cause and a warrant to do so.

This Court need not reach the conceptually closer issues of whether police may surveill into a closed toilet stall area from the common area of a restroom by looking through the gap between the stall door and the partitions.  See United States v White, 890 F.2d 1012, 1015 (8th Cir. 1989) (upholding surveillance because design of stall did not provide privacy from persons normally in common area); United States v. Hill, 393 F.3d 839, 841 (8th Cir. 2005) (holding no objective expectation of privacy in locked restroom because of physical limitations of facility and probability that patron will be asked to surrender use of restroom to others, where male and female together entered a single person restroom at convenience store and refused to leave).  Although the searches in White and Hill were upheld, the present case, in which Fulton left the door to a single person restroom ajar in a tavern, presents not even indicia of privacy that made those difficult cases.  The door was not closed and the patron inside would know and expect that anyone else could also walk in.

Therefore, the Court holds that Defendant Fulton had no legitimate expectation of privacy in the public restroom, whose

door was unlocked and ajar, at the time the police officer
followed and entered.[2]

When the officer entered and observed Fulton placing the
drugs and handgun into the medicine cabinet near the sink, the
officer had probable cause to arrest and to seize these items for
use as evidence.  Defendant's motion is denied, and the
appropriate Order was entered on January 5, 2007.


**January 10, 2007**                        **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge

---

[2] Given the Court's finding that the Fourth Amendment did
not protect this ladies room, with its open door, from entry by
the police officer, the Court need not decide whether,
alternatively, the officer had a reasonable suspicion for a
"Terry" stop of the Defendant before Defendant entered the
ladies' room, such that the officer could follow Defendant into
the room to conduct further investigation.